B1 (Official Form 1)(04/13)

| United States Bankruptcy Court<br>Western District of Texas | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**MA Lerin Hills Holder, LP** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all)<br>**45-5468352** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**c/o Andrew S. Cohen, Receiver**<br>**Golden Steves Cohen & Gordon LLP**<br>**300 Convent Street, Suite 2600**<br>**San Antonio, TX**     ZIP Code **78205** | Street Address of Joint Debtor (No. and Street, City, and State):<br><br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Bexar** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br><br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

| Type of Debtor<br>(Form of Organization) (Check one box) | Nature of Business<br>(Check one box) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>  *See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>■ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>  check this box and state type of entity below.) | ☐ Health Care Business<br>■ Single Asset Real Estate as defined<br>  in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ☐ Chapter 7<br>☐ Chapter 9<br>■ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13    ☐ Chapter 15 Petition for Recognition<br>    of a Foreign Main Proceeding<br>    ☐ Chapter 15 Petition for Recognition<br>    of a Foreign Nonmain Proceeding |

| Chapter 15 Debtors<br>Country of debtor's center of main interests:<br><br>Each country in which a foreign proceeding<br>by, regarding, or against debtor is pending: | Tax-Exempt Entity<br>(Check box, if applicable)<br>☐ Debtor is a tax-exempt organization<br>under Title 26 of the United States<br>Code (the Internal Revenue Code). | Nature of Debts<br>(Check one box)<br>☐ Debts are primarily consumer debts,     ■ Debts are primarily<br>defined in 11 U.S.C. § 101(8) as        business debts.<br>"incurred by an individual primarily for<br>a personal, family, or household purpose." |
|---|---|---|

| Filing Fee (Check one box) | Check one box: |
|---|---|
| ■ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must<br>attach signed application for the court's consideration certifying that the<br>debtor is unable to pay fee except in installments. Rule 1006(b). See Official<br>Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must<br>attach signed application for the court's consideration. See Official Form 3B. | **Chapter 11 Debtors**<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>■ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates)<br>are less than $2,490,925 *(amount subject to adjustment on 4-01/16 and every three years thereafter).*<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors,<br>in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ■ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid,<br>there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1,000-<br>5,000 | 5,001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | OVER<br>100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$500,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

B1 (Official Form 1)(04/13)                                                                                                          Page 2

| Voluntary Petition<br><br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**MA Lerin Hills Holder, LP** |
|---|---|

### All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet)

| Location<br>Where Filed: **- None -** | Case Number: | Date Filed: |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |

### Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet)

| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

| Exhibit A<br><br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | Exhibit B<br>(To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b).<br><br>X _____<br>   Signature of Attorney for Debtor(s)      (Date) |
|---|---|

### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No.

### Exhibit D

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

### Information Regarding the Debtor - Venue
(Check any applicable box)

■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

### Certification by a Debtor Who Resides as a Tenant of Residential Property
(Check all applicable boxes)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form 1)(04/13)

Page 3

| Voluntary Petition | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **MA Lerin Hills Holder, LP** |

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

### Signature of Attorney*

X _Deborah Wde_ (signature)
Signature of Attorney for Debtor(s)

__Deborah D. Williamson 21617500__
Printed Name of Attorney for Debtor(s)

**Dykema Cox Smith**
Firm Name

**112 E. Pecan Street, Suite 1800**
**San Antonio, TX 78205-1521**

_____
Address

**210-554-5500  Fax: 210-226-8395**
Telephone Number

_6/9/15_
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _(signature)_
Signature of Authorized Individual

**Andrew S. Cohen**
Printed Name of Authorized Individual

**Receiver**
Title of Authorized Individual

_6/9/15_
Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. §110; 18 U.S.C. §156.*

## CORPORATE RESOLUTION
## MA LERIN HILLS HOLDER, LP

The undersigned, as the sole officer of MA LERIN HILLS HOLDER, LP ("LANDCO" OR "COMPANY"), pursuant to *Order Immediately Appointing Temporary Receiver and Granting Temporary Injunction* (the "Initial Receivership Order") attached hereto as Exhibit "A", and the *Agreed First Amended Order Immediately Appointing Temporary Receiver and Granting Temporary Injunction* attached hereto as Exhibit "B" (the "Amended Receivership Order") (collectively the "Receivership Order"), authorizes, approves, consents to, and adopts the following resolutions:

**WHEREAS,** I, in my capacity as Receiver, have consulted with the advisors of the Company regarding the liabilities and liquidity situation of the Company, the strategic alternatives available to it and the impact of the foregoing on the Company's businesses; and

**WHEREAS,** I, in my capacity as Receiver, have had the opportunity to fully consider each of the strategic alternatives available to the Company; and

**WHEREAS,** in my judgment as Receiver, it is in the best interests of the Company, its creditors, and other interested parties that petitions be filed on behalf of the Company seeking relief under the provisions of chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"); and

**NOW, THEREFORE, BE IT**

**RESOLVED** that pursuant to the Receivership Order, I am the only officer (the "Designated Officer") of the Company and am empowered, on behalf of and in the name of the Company, to execute and verify petitions in the name of the Company under chapter 11 of the Bankruptcy Code ("Chapter 11") and to cause the same to be filed in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division; and be it

**RESOLVED FURTHER,** that, pursuant to the Receivership Order, I have authorized the Company to employ and retain the law firm of Dykema ("Dykema"), as general restructuring counsel for the Company in the Chapter 11 case to represent and assist the Company in carrying out their duties under the Bankruptcy Code; and be it

**RESOLVED FURTHER**, that, pursuant to the Receivership Order, I have authorized the Company to engage Golden Steves Cohen & Gordon LLP ("Golden Steves") as general real estate counsel to assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the rights and obligations of the Company; and be it

**RESOLVED FURTHER**, that, pursuant to the Receivership Order, I have authorized the Company to engage Padgett Strateman (collectively, together with Dykema and Golden Steves, the "Professionals") to provide, and as financial

advisor to assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations; and be it

**RESOLVED FURTHER,** that all acts lawfully done or actions lawfully taken by any of the Professionals to seek relief on behalf of the Company under Chapter 11 or in connection with such cases, or any matter related thereto, be and hereby are, adopted, ratified, confirmed, and approved in all respects as the acts and deeds of the Company.

**Dated this** *9th* **day of June, 2015.**


_____

Andrew S. Cohen
Receiver

# EXHIBIT A

NO. ___15-108___.

| | | |
|---|---|---|
| PUTNAM BRIDGE FUNDING III, LLC,<br>Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT |
| vs. | §<br>§ | |
| MA LERIN HILLS HOLDER, LP, LERIN | § | KENDALL COUNTY, TEXAS |
| HILLS UTILITY EASEMENT HOLDER, | § | |
| LLC, and LH DEVCO, INC., SEQUEL | § | 216th JUDICIAL DISTRICT |
| HOLDINGS, LLC, MAKAMAH | § | |
| ASSOCIATES, LLC, JOE F GODINES | § | |
| INVESTMENTS, LLC, and PETUCK | § | |
| CAPITAL CORP. | § | |
| Defendants. | § | |

### ORDER IMMEDIATELY APPOINTING TEMPORARY RECEIVER AND GRANTING TEMPORARY INJUNCTION

THIS MATTER CAME ON before the Court on the 7th day of April 2015, on the

*Verified Original Petition For Temporary Restraining Order and for the Immediate Appointment*

*of a Temporary Receiver* (the *"Original Petition"*) of Plaintiff Putnam Bridge Funding III, LLC,

as lender (*"Lender"* or *"Plaintiff"*) under the Loan Agreements (defined below), seeking:

(a) immediate appointment of temporary receiver to take immediate control over that certain 867

acres of real property and all improvements thereon more commonly known as the Lerin Hills

residential real estate development and located in Boerne, Texas (the *"Property"*) currently

managed and controlled by MA Lerin Hills Holder, LP (*"Landco"*), LH Devco, Inc. (*"Devco"*),

Lerin Hills Utility Easement Holder, LLC (*"Pipeco"*) (collectively, *"Borrowers"*); and (b) a

temporary temporary injunction against Borrowers, filed by Lender.

    Having considered the Original Petition, any responses thereto, the evidence and

arguments of counsel, if any, and the applicable law, the Court finds that the requests for a

temporary injunction and appointment of a receiver in the Original Petition are well-taken, and

upon the written statement of the Borrowers affirming that they do not oppose the entry of an

order appointing a receiver to take possession of the assets of, and to exercise control over, each of the Borrowers, including pursuant to chapter 64 of the Texas Civil Practice and Remedies Code and §§ 11.404 and 11.405 of the Texas Business Organizations Code, both are **GRANTED** and, for the reasons set forth below, the following orders should be entered:

## I.    FINDINGS IN SUPPORT OF ORDER

The Court finds as follows:

1.    On or as of June 28, 2012, Lender entered into that certain Devco Loan Agreement, dated June 28, 2012 (as amended thereafter, including as amended and restated pursuant to the Amended and Restated Devco Loan Agreement, dated February 7, 2014, the *"Devco Loan Agreement"*), pursuant to which Lender agreed to make certain loans to Devco (the *"Devco Loan"*). To further evidence the Devco Loan, Devco executed and delivered to Lender a Secured Promissory Note, dated June 28, 2012, payable to the order of Lender in the original principal amount of $5,419,963.00, bearing interest and being payable as therein provided.

2.    On or as of June 28, 2012, Lender entered into that certain Landco Loan Agreement, dated June 28, 2012 (as amended thereafter, including as amended and restated pursuant to the Amended and Restated Landco Loan Agreement, dated February 7, 2014, the *"Landco Loan Agreement"*), pursuant to which Lender agreed to make certain loans to Landco (the *"Landco Loan"*). To further evidence the Landco Loan, Landco executed and delivered to Lender a Secured Promissory Note, dated June 28, 2012, payable to the order of Lender in the original principal amount of $6,819,000.00, bearing interest and being payable as therein provided.

3.    On or as of June 28, 2012, Lender entered into that certain Pipeco Loan Agreement, dated June 28, 2012 (as amended thereafter, including as amended and restated

pursuant to the Amended and Restated Pipeco Loan Agreement, dated February 7, 2014, the "*Pipeco Loan Agreement*" and, together with the Devco Loan Agreement and the Landco Loan Agreement, the "*Loan Agreements*"), pursuant to which Lender agreed to make certain loans to Pipeco (the "*Pipeco Loan*" and, together with the Devco Loan and the Landco Loan, the "*Loans*"). To further evidence the Pipeco Loan, Pipeco executed and delivered to Lender a Secured Promissory Note, dated June 28, 2012, payable to the order of Lender in the original principal amount of $1,962,125.33, bearing interest and being payable as therein provided.

4.      Repayment of the Borrowers' obligations under the Loan Agreements is secured by, among other instruments, a deed of Trust, Collateral Assignment of Rents, Security Agreement, Financing Statement, and Fixture Filing (the "*Deed of Trust*") of even date therewith executed by Devco and Landco for the benefit of Lender, encumbering, among other assets, the Property, as more particularly described in the Deed of Trust.

5.      To guarantee the Borrowers' obligations under the Loan Agreements, each of the Borrowers entered into that certain Guaranty, Pledge, and Security Agreement (the "*Cross-Guaranty Agreement*"), dated June 28, 2012. Pursuant to the Cross-Guaranty Agreement, each Borrower guaranteed the full, prompt, and unconditional repayment of all of the Borrowers' obligations under the "*Loan Documents*."[1]

6.      Repayment of the Borrowers' obligations under the Loan Agreements was further supported by Limited Recourse Guaranty, Pledge, and Security Agreements (the "*Limited Guaranties*"), dated June 28, 2012 by Sequel Holdings, LLC ("*Sequel*"), Makamah Associates, LLC ("*Makamah*"), Joe F. Godines Investments, LLC ("*Godines Investments*"), and Petuck

---

[1] The Loan Agreements (as amended and restated), the secured promissory notes, the Deed of Trust, the Cross-Guaranty Agreement, the Limited Guaranties, and all other documents executed in connection with the Loans (as more fully defined in the Loan Agreements as the "*Devco Transaction Documents*", the "*Landco Transaction Documents*," and the "*Pipeco Transaction Documents*", are collectively referred to herein as the "*Loan Documents*."

Capital Corp. ("*Petuck*") (collectively, the "*Limited Guarantors*" together with Borrowers ("*Defendants*") in favor of Lender, pursuant to which each Limited Guarantor pledged its respective equity interests in one or more of the Borrowers to secure the repayment of all obligations under the Loan Documents. The Limited Guarantors were provided with due notice of Plaintiff's Original Petition, and have been dismissed from this action by separate order entered contemporaneously herewith.

7. Collectively, pursuant to the Loan Agreements, the Deed of Trust, the Cross-Guaranty Agreement, and the Limited Guaranties, Defendants granted to Lender a first-priority security interest in and lien on (i) all of the Borrowers' then owned or thereafter right, title, and interest in and to all property and (ii) the Limited Guarantors' equity interests in each of the Borrowers (collectively, and as defined more precisely in the Loan Documents, but specifically excluding any such equity interests tendered to Lender on or as of the date of this Order, the "*Collateral*").

8. Of the initial approximately $17.5 million in debt financing provided by Lender to Borrowers in 2012, approximately $6.76 million was to be used by Landco to refinance existing debt of the Borrowers, approximately $2.5 million was to be used by Pipeco to build a water transmission pipe from the Guadalupe-Blanco River Authority ("*GBRA*") to the Property, and the approximate $8.3 million remainder was to be used by Devco to construct road, utilities, and other infrastructure on the Property.

9. Borrowers represented to Lender in 2012 that $8.3 million would be sufficient to get to a first closing on building lots on the Property, which would provide additional funding to enable Devco to complete the first phase of development.

10. In 2013, Lender learned that the Borrowers had experienced a material shortage of capital requiring additional advances of approximately $13 million. Consequently, the Borrowers were left with no capital from any source, and would require significant additional capital to get the Property to a first closing on building lots with Lennar and other home builders.

11. This triggered material breaches of various provisions of the Original Devco Loan Agreement, including Devco's representation and warranty to Lender in Section 5.7 of the Original Devco Loan Agreement that loan proceeds would be sufficient to complete development of the Property, and Devco's representation and warranty to Lender in Section 5.20 of the Devco Loan Agreement that all factual information supplied by Devco to Lender in connection with the loan transactions would be accurate and not omit any material facts that would render it misleading.

12. Lender agreed to provide another approximately $13 million (the "*Additional Financing*") to Devco to enable Devco to get the development to a first closing, which was memorialized in the February 2014 amendments and restatements to each of the Loan Agreements. In addition, Devco executed and delivered to Lender an Amended and Restated Secured Grid Promissory Note payable to the order of Lender in the original principal amount of $23,078,143.08, bearing interest and being payable as therein provided.

13. Subsequently, Devco failed to provide Lender with an amended budget to cover the six-month time period after the previously approved budget expired on August 7, 2014, as required by Section 6.1(e) of the Devco Loan Agreement. The Borrowers also failed to obtain water at the Property, including by way of a contemplated "wheeling agreement" with the City of Boerne pursuant to which the Borrowers contemplated that Devco would obtain the necessary water from the GBRA. Other agreed milestones at the Property have not been met, including

completion of a sanitary sewage and re-use system, completion of a gas line, final platting, and completion of the streets and entrance to the Property in accordance with TEXDOT requirements. This further prevented the home builders from purchasing lots, and has left the Borrowers without any cash flow or means to fund their operations.

14. Based on the foregoing, Lender has established a probable right of relief on a claim for beach of numerous provisions of the Devco Loan Agreement, including, *inter alia*:

(a) the requirement in Section 2.3(b) of the Devco Loan Agreement that Devco discuss any proposed expenses to be funded with loan proceeds in excess of $50,000 and obtain Lender's approval before incurring such expense;

(b) the prohibition in Section 2.(3) of the Devco Loan Agreement on Devco making any disbursement of loan proceeds inconsistent with the Amended Devco Budget;

(c) Devco's representation and warranty to Lender in Section 5.7 of the Devco Loan Agreement that the loan proceeds would be sufficient for completion of the Property in accordance with the timeline, budget and specifications of the Devco Amended Budget;

(d) Devco's representation and warranty to Lender in Section 5.10 of the Devco Loan Agreement that all utility services necessary for the use of the Property, including water supply, will be available at the boundaries of the Property upon completion of the work in the Devco Amended Budget; and

(e) Devco's representation and warranty to Lender in Section 5.20 of the Devco Loan Agreement that all factual information supplied by Devco to Lender in connection with the loan transactions would be accurate and not omit any material facts that would render it misleading.

15. Pursuant to the cross-default provisions of Section 7.1(e) of the Loan Agreements, the existence of an Event of Default under one Loan Agreement constitutes an Event of Default under each of the other Loan Agreements.

16. On or about December 26, 2014, Lender sent to the Borrowers a Notice of Default letter (the "*Default Notice*"), which letter constituted notice of the occurrence of certain defaults that, if not timely cured pursuant to the Loan Agreements, would constitute Events of Default

thereunder. The Events of Default identified in the December 26 letter (the *"Existing Defaults"*) were not cured by the Borrowers, and are continuing under the Loan Documents. On or about March 13, 2015, the Lender sent a letter to the Borrowers accelerating all indebtedness and obligations owing under the Loan Documents.

17.     In late January 2015, one month after the delivery of the Default Notice on December 26, 2014, the Borrowers provided Lender with a list of accounts payable showing approximately $1.89 million in outstanding payables as of January 28, 2015. Subsequently, Lender has received an updated accounts payable listing showing that total payables had increased to $2.45 million as of March 6, 2015.

18.     On or about February 4, 2015, Central Texas Water Maintenance, LLC (*"CTWM"*), issued a "Stop Work Notice" to the Borrowers. CTWM is the outside manufacturer and installer of the booster tank, water distribution tank, and re-use tanks and systems integral to the installation of a permanent water supply to the Property, and is currently owed in excess of $545,000.

19.     On or about February 13, 2015, one of CTWM's subcontractors, Crawford Electric Supply Company, took the first step toward perfecting a subcontactor's lien by serving a written demand for payment on Devco, Lender, and the Lerin Hills Municipal Utility District.

20.     Lender has also been informed of the existence of an outstanding mechanic's or materialman's lien on the Property arising out of unpaid work performed by Jones & Carter, Inc. under three separate contracts (the *"J&C Lien"*), which, upon information and belief, has been outstanding since December 18, 2012. The existence of the J&C Lien constitutes a breach of the representations and warranties made by Devco in Section 5.11 of the Devco Loan Agreement, the representations and warranties made by Landco in Section 5.7 of the Landco Loan

Agreement, and the representations and warranties made by Pipeco in Section 5.11 of the Pipeco Loan Agreement.

21.     The Kendall County Commissioners Court held a hearing on March 9, 2015 to consider, among other agenda items, "a Preliminary Plat for Lerin Hills Garden Home Subdivision, Unit 1A, phase 1." Although the Commissioners Court approved the plat, it cautioned the Borrowers that they could neither sell any buildings nor allow anybody to occupy the buildings until both water and wastewater services were in place, and that that restriction would be included in the plat. Thus, the Borrowers may be precluded from completing arrangements with any home builder until the water supply issue is resolved.

22.     The Borrowers acknowledge that, pursuant to the Loan Documents, they are presently indebted to Lender in an amount not less than $38,941,399.00, including principal, accrued interest thereon, and other unpaid fees and expenses, which amount is presently due and owing.  Based on their existing financial records, among other financial information, the Borrowers represent that the amount of their current total debts and liabilities exceeds the current market value of their assets and, accordingly, the Borrowers are insolvent.

23.     Accordingly, the Court finds that it has jurisdiction over all parties to this suit, that Borrowers have received notice of the Original Petition, that Borrowers are in default of their obligations under the Loan Documents, that the Property is insufficient to discharge the indebtedness secured thereby, that immediate and irreparable injury, loss, or damage could result to Lender by virtue of the diminution of, waste of, or material injury to, its Collateral, and that the requested relief should be granted.

## II.    ORDER APPOINTING RECEIVER

IT IS, THEREFORE, ORDERED, that effective on April ___7___, 2015:

24.    Andrew S. Cohen, a Texas resident who possesses the necessary qualifications and is not an attorney for or related to any party in this action, be and hereby is appointed the Receiver (the *"Receiver"*) for the Property and all other Collateral currently held by, or in control of, Borrowers (the *"Receivership Assets"*) and given the authority to do any and all acts necessary to the proper and lawful conduct of the receivership.

25.    The Receiver shall file with the Clerk of this Court a bond in the amount of $2,500 either in cash, by firm check, or with sureties approved by the Court, conditioned that he will well and truly perform the duties of his office and duly account for all monies and properties which may come into his hands and abide by and perform all things which he shall be directed to do.

26.    Until further order of this Court, the Receiver shall have all powers that are authorized under § 64.031 of the Texas Civil Practice and Remedies Code and §§ 11.404 and 11.405 of the Texas Business Organizations Code. The Receiver shall be compensated on an hourly-fee basis. In addition, the Receiver is hereby authorized forthwith to take any actions necessary to the proper and lawful conduct of the Borrowers and the Property, including the following:

      (a)    To take any actions necessary to identify and take complete and exclusive possession, control, and custody of and operate the Receivership Assets, including the right to open mail sent to Borrowers, to change the trade name of the business located on the Property, and the right to enter into, change, modify, or terminate existing contracts;

      (b)    To take and maintain possession of all documents, books, records, papers, and accounts relating to the Receivership Assets;

      (c)    To be exclusively vested with all the powers of an officer, director, manager, managing member, general partner, or other controlling person,

as applicable, of each Borrower, including the power to file a voluntary petition, or consent to an involuntary petition, for relief for any Borrower under the United States Bankruptcy Code;

(d) To retain or remove, as the Receiver deems necessary or advisable, any employee, agent, contractor, officer, director, manager, managing member, or general partner, as applicable, of any Borrower;

(e) Take and maintain control, possession, and/or custody of (a) all instruments evidencing any note receivable, (b) all assignments and endorsements of any such note receivable, and (c) all other instruments and other assets constituting the Receivership Assets, in each case, with the Receiver maintaining control, possession and/or custody, to the extent the Receiver deems necessary, of the books, papers, information, documents, and records of the Borrowers necessary to facilitate the maintenance, preservation, management, collection and realization of the Receivership Assets;

(f) To manage and direct the business and financial affairs of the Receivership Assets and any entity owned or controlled by the Receivership Assets, and to develop and maintain a monthly operating budget in consultation with Lender that will serve as the basis for monthly requisitions to fund operations;

(g) To investigate and determine, in consultation with Lender, the best course of action to protect and, ultimately, maximize the value of the Receivership Assets through prudent management and development.

(h) To direct the deposit of proceeds of the Property and other receipts of Borrowers for payment of Borrowers' obligations;

(i) To allow Lender and its agents, employees, representatives, and independent contractors to inspect the Receivership Assets and prepare the same for foreclosure by Lender or reorganization through a petition (whether voluntary or involuntary) for relief under the United States Bankruptcy Code;

(j) To consent to any lawful process by Lender to enforce its rights in the Collateral, whether through nonjudicial foreclosure, petition (whether voluntary or involuntary) for relief under the United States Bankruptcy Code, or otherwise;

(k) To use the proceeds of the Property and other receipts of the Borrowers, and to receive and use protective advances made by Lender to the Receiver at Lender's option, to pay the various costs necessary to maintain, protect, and insure the Property, or to otherwise effect the disposition and monetization of the Property, in each case either with written approval from the Lender or consistent with a budget to be agreed

upon in writing by the Receiver and Lender, with all such advances increasing the obligations owing to Lender under the Loan Agreements;

(l)  To engage Golden Steves Cohen & Gordon LLP and Dykema Cox Smith and, in consultation with Lender, to employ such other employees, consultants, or development or other professionals (including legal advisors) that may be necessary to provide services relating to the management of the receivership or the maintenance of the Receivership Assets, including the development of the Property,

(m)  Enter into agreements relating to the administration of the Receivership Assets, including those relating to the employment of such managers, agents, custodians, consultants, investigators, engineers and accountants as the Receiver deems necessary to allow the Receiver to perform the duties set forth in this order;

(n)  Obtain any necessary insurance, including errors and omissions insurance, relating to the performance of the Receiver's duties under this Order, with the costs of such insurance to be paid from the Receivership Assets; and

(o)  To engage in all such actions, and exercise all the rights and duties, more fully set forth in the receivership order to be submitted in connection herewith as may be necessary or useful in preserving the Property and all other Collateral for the benefit of Lender.

27.  Any money coming into the possession of the Receiver and not expended for any of the purposes authorized herein shall be turned over by the Receiver to Lender for application against the then-outstanding obligations owed by Borrowers to Lender, subject to disgorgement as may be ordered by further order of this Court pursuant to a final, no longer appealable judgment.

28.  The Receiver shall, from and after the entry of this Order, be vested with all the powers of an officer, director, shareholder, general partner, manager, managing member, or other person in control, as applicable, of each of the Borrowers, and authorized and empowered, to the extent deemed necessary by the Receiver after consultation with Lender, and shall be empowered to exercise all such powers of an officer, director, shareholder, general partner, manager, managing member, or other person in control of each Borrower, including the power to make all

management and operational decisions for and on behalf of the Borrowers and to file a voluntary petition, or consent to an involuntary petition, for relief for any Borrower under the United States Bankruptcy Code. For the avoidance of doubt, nothing contained in the organizational documents of any Borrower shall be construed to limit the powers of the Receiver as set forth in this Order.

29.     The Receiver shall have no liability to any party, unless the Receiver has engaged in a breach of fiduciary duty, willful misconduct, fraud, gross negligence, or conversion. Subject to the foregoing, any debts, liabilities, or obligations incurred by the Receiver in the course of this receivership, including the operation or management of the Receivership Assets, whether in the name of the Receiver or the Receivership Assets, shall be the debt, liability, and obligation of the receivership estate only and not of the Receiver or any employee or agent thereof personally. All employees, agents, and representatives of the Receiver shall have the same judicial immunity and protections of this Court as the Receiver enjoys.

30.     To the extent that there is any disagreement arising between the Receiver and Lender or the Borrowers in connection with the matters relating to this receivership, this Court shall have jurisdiction to resolve such disputes.

31.     Borrowers, and their officers, directors, partners, managers, agents, servants, employees, representatives, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, shall deliver to the Receiver any and all Receivership Assets in the possession or under the control of any one or more of them.

32.     All persons, including materialmen and vendors, lessors, management companies, creditors, banks, investors, former officers, employees, agents, representatives, consultants,

equity holders and others associated with or in connection with the Borrowers, with actual notice of this Order, are enjoined from in any way disturbing the Receivership Assets and from prosecuting any actions or proceedings designed to collect their debts or which involve the Receiver or which affect the property of Borrowers, to the extent that the same would injure the Collateral or interfere with or disturb (or encourage others to interfere with or disturb) these receivership proceedings, without the permission of this Court; provided, however, nothing herein shall preclude Lender from exercising its rights and remedies under the Loan Agreements and the other Loan Documents, including but not limited to, foreclosing on the Collateral; provided, further, nothing herein shall preclude any party with standing to seek to modify the immediately preceding injunctive relief granted by this Court, after notice and a hearing. Any such actions in violation of the preceding statements in this Paragraph shall be null and void.

33.    The Receiver is hereby authorized to defend, compromise and adjust such actions or proceedings in state or federal courts now pending and hereafter instituted, as may in his sole discretion be advisable or proper for the protection of the Receivership Assets and to investigate, institute, prosecute, compromise and adjust actions in state or federal court as may in his sole discretion be advisable or proper to recover Receivership Assets improperly or unlawfully held by any person, including but not limited to Borrowers herein; and in that connection the Receiver is hereby indemnified and held harmless by the Receivership estate, to the extent of any equity in the Receivership Assets, for any judgment, costs, or expenses suffered or incurred by him or any of his agents or attorneys as a result of actions instituted against him or them in relation to the discharge of their duties aforesaid or in carrying out or furtherance of this Order; provided, however, that nothing herein shall be construed to indemnify the Receiver to the extent that such

judgment, costs, or expenses arise from the gross negligence, willful misconduct, or fraud of the Receiver or any of his agents or attorneys.

34.    The Receiver shall make available to Lender, for inspection and copying, any and all books and records of Borrowers relating to the Receivership Assets, now or hereafter in existence. .

35.    The Receiver shall keep Lender apprised at reasonable intervals of all information and developments concerning the operation of the Receivership, until the Receivership is terminated.

36.    The Receiver shall file periodic applications with the Court for approval and payment of of his fees and those of any professionals that he may hire.  Such fees and all reasonable and necessary expenses that are incurred by the Receiver or the Receivership Assets shall be paid by the Lender within 10 days of the Court's order approving the Receiver's application.  If for any reason the Lender fails to pay such fees and expenses within 10 days of the Court's order, the Receiver is hereby authorized to pay all approved fees and expenses from the Receivership Assets and to take such actions as may be necessary to liquidate Receivership Assets for this purpose; and

IT IS FURTHER ORDERED that this Court assumes jurisdiction over and takes possession of the assets, real and personal, tangible and intangible, of whatever kind and description, wherever located, which constitute the Receivership Assets; and

IT IS FURTHER ORDERED that all Borrowers and present and former Limited Guarantors, and all present and former officers, directors, managers, managing members, partners, agents, representatives, directors, other controlling persons, consultants, agents, representatives, bookkeepers, accountants, and employees of any Borrower or present or former

Limited Guarantor, shall not hinder, delay, frustrate, impede, or otherwise take any actions that are intended to or would adversely impact (i) the efforts of the Receiver, (ii) the receivership, (iii) the value of the Property or the Collateral; or (iv) the efforts of the Receiver to maximize the value of the Collateral (including collection of all accounts receivable owing to the Borrowers), and all such parties shall reasonably cooperate with the Receiver in connection with the foregoing, including providing any information pertaining to the Borrowers, the Collateral and Property or in connection with the value or operations of the Property; *provided, however,* nothing herein shall preclude any party with standing from seeking to modify the immediately preceding injunctive relief granted by this Court, after notice and a hearing; and

**IT IS FURTHER ORDERED** that all present officers, directors, managers, managing members, and general partners of the Borrowers shall, without the need for any additional corporate documentation, be deemed to have resigned such positions effective as of the entry of this Order; and

**IT IS FURTHER ORDERED** that the Receiver shall have the authority to take custody, control, and possession of the Receivership Assets with the full power to institute any actions or proceedings to obtain or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Assets, and all such actions can be filed in this Court; any actions sought by creditors against the Receiver, the Receivership Assets, or that in any way interferes with the Receivership actions hereunder shall be filed in this Court; and

**IT IS FURTHER ORDERED** that creditors and all other persons are hereby restrained and enjoined from commencing any action to interfere with or impede the activities and actions of the Receiver hereunder and his efforts to take exclusive control of the Receivership Assets;

provided, however, nothing herein shall preclude any party with standing from seeking to modify the immediately preceding injunctive relief granted by this Court, after notice and a hearing; and

**IT IS FURTHER ORDERED** that the Receiver shall file an inventory with this Court, and serve copies of same upon counsel for Lender and Borrowers within thirty (30) days of the entry of this Order summarizing the activities of the Receiver; and

**IT IS FURTHER ORDERED** that the appointment of the temporary receiver shall continue through the time of final trial of this case at 8:30 o'clock _a_.m. on the 5th day of _APRIL_, 20_16_.

### III.  FURTHER FINDINGS AND TEMPORARY INJUNCTION AGAINST BORROWERS

37.  Lender has requested that the Court enter a temporary injunction to preserve the status quo pending a trial on the merits and to prevent Borrowers' sale, transfer, or further encumbrance of the Collateral.

38.  In addition to the findings set forth above, the Court finds as follows:

(a)  It is apparent from the Original Petition and based on the findings set forth herein that immediate and irreparable injury, loss, and/or damage could result to Lender by virtue of the diminution of, waste of, or material injury to, its Collateral.

(b)  Due to the nature of the Collateral and the circumstances more fully described above, there is a grave and immediate risk of diminution in the value of, the loss or waste of, or material injury to, the Collateral.

(c)  Unless the requested temporary injunction issues, Borrowers, which have been in default of the Loan Agreement since December 26, 2014, and have, to this point, failed to cure the default, might have the power to sell, transfer, dispose of, or otherwise encumber Collateral before a hearing can be had on Lender's application for preliminary injunction, and Lender justifiably fears that due to Borrowers continued inability to meet their obligations, Borrowers will not be able to satisfy any such obligations except through the collection of the Collateral. Thus, Lender has no adequate remedy at law. Injunctive relief is appropriate to preserve the status quo and to prevent the diminution in the value of, the loss or waste of, or material injury to, the Collateral.

(d)     In the absence of a temporary injunction, Lender may suffer irreparable harm inasmuch as Collateral is the only known, available, and realistic source of repayment of the more than $38,941,399.00 owed by the Borrowers to Lender; and (b) to the extent that the Property is not serviced and maintained, the value of the Collateral will be threatened. Specifically, if commission of the acts described above is not restrained and enjoined immediately, Lender may suffer irreparable injury, because the value of Lender's Collateral could be diminished in a manner that will be difficult to measure.

(e)     Lender has no adequate remedy at law to preserve the value and secure the return of its Collateral, and monetary damages will be insufficient to fully compensate Lender for the loss, diminution in value of, and material injury to the Collateral because Borrowers are unlikely to be able to satisfy any money judgment obtained, except to the extent the Property is preserved.  Accordingly, there is no other remedy that will fully and adequately preserve Lender's rights.  Only a temporary injunction will protect Lender's rights.  Correspondingly, any potential harm to Borrowers is outweighed by the potential harm to Lender.

**IT IS, THEREFORE, ORDERED** that, pending trial on the merits of this action, each of the Borrowers, their current or former employees, officers, directors, managers, managing members, general partners, agents, professionals, attorneys, bookkeepers, accountants, or any other person or entity of whom Borrowers may have or had authority or control, are hereby restrained and enjoined from selling, transferring, disposing, or otherwise encumbering or affecting the Collateral, to protect Lender's interests in the Collateral; further, each of the Borrowers, their current or former employees, officers, directors, managers, managing members, general partners, agents, professionals, attorneys, bookkeepers, accountants, or any other person or entity of whom the Borrowers may have or had authority or control, shall fully cooperate with and not interfere with the Receiver to close any transactions consistent with the terms hereof, so long as the Receiver commits to compensate them for the time spent and reimburse them for all reasonable, necessary out-of-pocket expenses actually incurred in doing so, in accordance with a budget approved in writing by the Receiver and Lender.

**IT IS FURTHER ORDERED** that, pending a trial on the merits of this action, each of the Borrowers, and all persons acting under any of their authority and control or in concert or privity with any of them, are hereby restrained from withdrawing, depleting, causing the waste of, removing, spending, selling, transferring, further encumbering, tampering with, or otherwise affecting the Collateral in whole or in part;

**IT IS FURTHER ORDERED** that the temporary injunction shall continue through the time of final trial of this case commencing at _8:30_ o'clock _A_.m. on the _5th_ day of _April_, 201_6_;

**IT IS FURTHER ORDERED** that Lender shall, in accordance with Rule 684 of the Texas Rules of Civil Procedure, file a bond with the Kendall County District Clerk's Office in the amount of $_1,500_ ⁓ _0/0_

**IT IS SO ORDERED** at _10:10_ o'clock _A_.m. on this _7th_ day of April 2015.

_____
JUDGE PRESIDING

# EXHIBIT B

CAUSE NO. 15-108

| | | |
|---|---|---|
| PUTNAM BRIDGE FUNDING III, LLC | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v, | § | |
| | § | |
| MA LERIN HILLS HOLDER, LP; LERIN | § | |
| HILLS UTILITY EASEMENT HOLDER, | § | KENDALL COUNTY, TEXAS |
| LLC; and LH DEVCO, INC., SEQUEL | § | |
| HOLDINGS, LLC; MAKAMAH | § | |
| ASSOCIATES, LLC; JOE F. GODINES | § | |
| INVESTMENTS, LLC; and PETUCK | § | |
| CAPITAL CORP. | § | |
| | § | |
| Defendants. | § | 216th JUDICIAL DISTRICT |

## AGREED FIRST AMENDED ORDER IMMEDIATELY APPOINTING TEMPORARY RECEIVER AND GRANTING TEMPORARY INJUNCTION

THIS MATTER CAME ON before the Court on the 7th day of April, 2015, on the *Verified Original Petition For Temporary Restraining Order and for the Immediate Appointment of a Temporary Receiver* (the *"Original Petition"*) of Plaintiff Putnam Bridge Funding III, LLC, as lender (*"Lender"* or *"Plaintiff"*) under the Loan Agreements (defined below), seeking: (a) immediate appointment of temporary receiver to take immediate control over that certain 867 acres of real property and all improvements thereon more commonly known as the Lerin Hills residential real estate development and located in Boerne, Texas (the *"Property"*) currently managed and controlled by MA Lerin Hills Holder, LP (*"Landco"*), LH Devco, Inc. (*"Devco"*), Lerin Hills Utility Easement Holder, LLC (*"Pipeco"*) (collectively, *"Borrowers"*); and (b) a temporary injunction against Borrowers, filed by Lender.

Having considered the Original Petition, any responses thereto, the evidence and arguments of counsel, if any, and the applicable law, the Court finds that the requests for a temporary injunction and appointment of a receiver in the Original Petition are well-taken, and

upon the written statement of the Borrowers affirming that they do not oppose the entry of an order appointing a receiver to take possession of the assets of, and to exercise control over, each of the Borrowers, including pursuant to chapter 64 of the Texas Civil Practice and Remedies Code and §§ 11.404 and 11.405 of the Texas Business Organizations Code, both are **GRANTED** and, for the reasons set forth below, the following orders should be entered:

## I.  FINDINGS IN SUPPORT OF ORDER

The Court finds as follows:

1.  On or as of June 28, 2012, Lender entered into that certain Devco Loan Agreement, dated June 28, 2012 (as amended thereafter, including as amended and restated pursuant to the Amended and Restated Devco Loan Agreement, dated February 7, 2014, the "*Devco Loan Agreement*"), pursuant to which Lender agreed to make certain loans to Devco (the "*Devco Loan*"). To further evidence the Devco Loan, Devco executed and delivered to Lender a Secured Promissory Note, dated June 28, 2012, payable to the order of Lender in the original principal amount of $5,419,963.00, bearing interest and being payable as therein provided.

2.  On or as of June 28, 2012, Lender entered into that certain Landco Loan Agreement, dated June 28, 2012 (as amended thereafter, including as amended and restated pursuant to the Amended and Restated Landco Loan Agreement, dated February 7, 2014, the "*Landco Loan Agreement*"), pursuant to which Lender agreed to make certain loans to Landco (the "*Landco Loan*"). To further evidence the Landco Loan, Landco executed and delivered to Lender a Secured Promissory Note, dated June 28, 2012, payable to the order of Lender in the original principal amount of $6,819,000.00, bearing interest and being payable as therein provided.

2

3. On or as of June 28, 2012, Lender entered into that certain Pipeco Loan Agreement, dated June 28, 2012 (as amended thereafter, including as amended and restated pursuant to the Amended and Restated Pipeco Loan Agreement, dated February 7, 2014, the "*Pipeco Loan Agreement*" and, together with the Devco Loan Agreement and the Landco Loan Agreement, the "*Loan Agreements*"), pursuant to which Lender agreed to make certain loans to Pipeco (the "*Pipeco Loan*" and, together with the Devco Loan and the Landco Loan, the "*Loans*"). To further evidence the Pipeco Loan, Pipeco executed and delivered to Lender a Secured Promissory Note, dated June 28, 2012, payable to the order of Lender in the original principal amount of $1,962,125.33, bearing interest and being payable as therein provided.

4. Repayment of the Borrowers' obligations under the Loan Agreements is secured by, among other instruments, a deed of Trust, Collateral Assignment of Rents, Security Agreement, Financing Statement, and Fixture Filing (the "*Deed of Trust*") of even date therewith executed by Devco and Landco for the benefit of Lender, encumbering, among other assets, the Property, as more particularly described in the Deed of Trust.

5. To guarantee the Borrowers' obligations under the Loan Agreements, each of the Borrowers entered into that certain Guaranty, Pledge, and Security Agreement (the "*Cross-Guaranty Agreement*"), dated June 28, 2012. Pursuant to the Cross-Guaranty Agreement, each Borrower guaranteed the full, prompt, and unconditional repayment of all of the Borrowers' obligations under the "*Loan Documents*."[1]

6. Repayment of the Borrowers' obligations under the Loan Agreements was further supported by Limited Recourse Guaranty, Pledge, and Security Agreements (the "*Limited*

---

[1] The Loan Agreements (as amended and restated), the secured promissory notes, the Deed of Trust, the Cross-Guaranty Agreement, the Limited Guaranties, and all other documents executed in connection with the Loans (as more fully defined in the Loan Agreements as the "*Devco Transaction Documents*", the "*Landco Transaction Documents*," and the "*Pipeco Transaction Documents*", are collectively referred to herein as the "*Loan Documents*."

*Guaranties*"), dated June 28, 2012 by Sequel Holdings, LLC ("*Sequel*"), Makamah Associates, LLC ("*Makamah*"), Joe F. Godines Investments, LLC ("*Godines Investments*"), and Petuck Capital Corp. ("*Petuck*") (collectively, the "*Limited Guarantors*" together with Borrowers ("*Defendants*") in favor of Lender, pursuant to which each Limited Guarantor pledged its respective equity interests in one or more of the Borrowers to secure the repayment of all obligations under the Loan Documents. The Limited Guarantors were provided with due notice of Plaintiff's Original Petition, and have been dismissed from this action by separate order entered contemporaneously herewith.

7.      Collectively, pursuant to the Loan Agreements, the Deed of Trust, the Cross-Guaranty Agreement, and the Limited Guaranties, Defendants granted to Lender a first-priority security interest in and lien on (i) all of the Borrowers' then owned or thereafter right, title, and interest in and to all property and (ii) the Limited Guarantors' equity interests in each of the Borrowers (collectively, and as defined more precisely in the Loan Documents, but specifically excluding any such equity interests tendered to Lender on or as of the date of this Order, the "*Collateral*").

8.      Of the initial approximately $17.5 million in debt financing provided by Lender to Borrowers in 2012, approximately $6.76 million was to be used by Landco to refinance existing debt of the Borrowers, approximately $2.5 million was to be used by Pipeco to build a water transmission pipe from the Guadalupe-Blanco River Authority ("*GBRA*") to the Property, and the approximate $8.3 million remainder was to be used by Devco to construct road, utilities, and other infrastructure on the Property.

4

9.     Borrowers represented to Lender in 2012 that $8.3 million would be sufficient to get to a first closing on building lots on the Property, which would provide additional funding to enable Devco to complete the first phase of development.

10.    In 2013, Lender learned that the Borrowers had experienced a material shortage of capital requiring additional advances of approximately $13 million.  Consequently, the Borrowers were left with no capital from any source, and would require significant additional capital to get the Property to a first closing on building lots with Lennar and other home builders.

11.    This triggered material breaches of various provisions of the Original Devco Loan Agreement, including Devco's representation and warranty to Lender in Section 5.7 of the Original Devco Loan Agreement that loan proceeds would be sufficient to complete development of the Property, and Devco's representation and warranty to Lender in Section 5.20 of the Devco Loan Agreement that all factual information supplied by Devco to Lender in connection with the loan transactions would be accurate and not omit any material facts that would render it misleading.

12.    Lender agreed to provide another approximately $13 million (the *"Additional Financing"*) to Devco to enable Devco to get the development to a first closing, which was memorialized in the February 2014 amendments and restatements to each of the Loan Agreements.  In addition, Devco executed and delivered to Lender an Amended and Restated Secured Grid Promissory Note payable to the order of Lender in the original principal amount of $23,078,143.08, bearing interest and being payable as therein provided.

13.    Subsequently, Devco failed to provide Lender with an amended budget to cover the six-month time period after the previously approved budget expired on August 7, 2014, as required by Section 6.1(e) of the Devco Loan Agreement.  The Borrowers also failed to obtain

5

water at the Property, including by way of a contemplated "wheeling agreement" with the City of Boerne pursuant to which the Borrowers contemplated that Devco would obtain the necessary water from the GBRA. Other agreed milestones at the Property have not been met, including completion of a sanitary sewage and re-use system, completion of a gas line, final platting, and completion of the streets and entrance to the Property in accordance with TEXDOT requirements. This further prevented the home builders from purchasing lots, and has left the Borrowers without any cash flow or means to fund their operations.

14.     Based on the foregoing, Lender has established a probable right of relief on a claim for beach of numerous provisions of the Devco Loan Agreement, including, *inter alia*:

   (a)   the requirement in Section 2.3(b) of the Devco Loan Agreement that Devco discuss any proposed expenses to be funded with loan proceeds in excess of $50,000 and obtain Lender's approval before incurring such expense;

   (b)   the prohibition in Section 2.(3) of the Devco Loan Agreement on Devco making any disbursement of loan proceeds inconsistent with the Amended Devco Budget;

   (c)   Devco's representation and warranty to Lender in Section 5.7 of the Devco Loan Agreement that the loan proceeds would be sufficient for completion of the Property in accordance with the timeline, budget and specifications of the Devco Amended Budget;

   (d)   Devco's representation and warranty to Lender in Section 5.10 of the Devco Loan Agreement that all utility services necessary for the use of the Property, including water supply, will be available at the boundaries of the Property upon completion of the work in the Devco Amended Budget; and

   (e)   Devco's representation and warranty to Lender in Section 5.20 of the Devco Loan Agreement that all factual information supplied by Devco to Lender in connection with the loan transactions would be accurate and not omit any material facts that would render it misleading.

15.     Pursuant to the cross-default provisions of Section 7.1(e) of the Loan Agreements, the existence of an Event of Default under one Loan Agreement constitutes an Event of Default under each of the other Loan Agreements.

6

16.     On or about December 26, 2014, Lender sent to the Borrowers a Notice of Default letter (the *"Default Notice"*), which letter constituted notice of the occurrence of certain defaults that, if not timely cured pursuant to the Loan Agreements, would constitute Events of Default thereunder. The Events of Default identified in the December 26 letter (the *"Existing Defaults"*) were not cured by the Borrowers, and are continuing under the Loan Documents. On or about March 13, 2015, the Lender sent a letter to the Borrowers accelerating all indebtedness and obligations owing under the Loan Documents.

17.     In late January 2015, one month after the delivery of the Default Notice on December 26, 2014, the Borrowers provided Lender with a list of accounts payable showing approximately $1.89 million in outstanding payables as of January 28, 2015. Subsequently, Lender has received an updated accounts payable listing showing that total payables had increased to $2.45 million as of March 6, 2015.

18.     On or about February 4, 2015, Central Texas Water Maintenance, LLC (*"CTWM"*), issued a "Stop Work Notice" to the Borrowers. CTWM is the outside manufacturer and installer of the booster tank, water distribution tank, and re-use tanks and systems integral to the installation of a permanent water supply to the Property, and is currently owed in excess of $545,000.

19.     On or about February 13, 2015, one of CTWM's subcontractors, Crawford Electric Supply Company, took the first step toward perfecting a subcontractor's lien by serving a written demand for payment on Devco, Lender, and the Lerin Hills Municipal Utility District.

20.     Lender has also been informed of the existence of an outstanding mechanic's or materialman's lien on the Property arising out of unpaid work performed by Jones & Carter, Inc. under three separate contracts (the *"J&C Lien"*), which, upon information and belief, has been

7

outstanding since December 18, 2012. The existence of the J&C Lien constitutes a breach of the representations and warranties made by Devco in Section 5.11 of the Devco Loan Agreement, the representations and warranties made by Landco in Section 5.7 of the Landco Loan Agreement, and the representations and warranties made by Pipeco in Section 5.11 of the Pipeco Loan Agreement.

21.     The Kendall County Commissioners Court held a hearing on March 9, 2015 to consider, among other agenda items, "a Preliminary Plat for Lerin Hills Garden Home Subdivision, Unit 1A, phase 1." Although the Commissioners Court approved the plat, it cautioned the Borrowers that they could neither sell any buildings nor allow anybody to occupy the buildings until both water and wastewater services were in place, and that that restriction would be included in the plat. Thus, the Borrowers may be precluded from completing arrangements with any home builder until the water supply issue is resolved.

22.     The Borrowers acknowledge that, pursuant to the Loan Documents, they are presently indebted to Lender in an amount not less than $38,941,399.00, including principal, accrued interest thereon, and other unpaid fees and expenses, which amount is presently due and owing. Based on their existing financial records, among other financial information, the Borrowers represent that the amount of their current total debts and liabilities exceeds the current market value of their assets and, accordingly, the Borrowers are insolvent.

23.     Accordingly, the Court finds that it has jurisdiction over all parties to this suit, that Borrowers have received notice of the Original Petition, that Borrowers are in default of their obligations under the Loan Documents, that the Property is insufficient to discharge the indebtedness secured thereby, that immediate and irreparable injury, loss, or damage could result

8

to Lender by virtue of the diminution of, waste of, or material injury to, its Collateral, and that the requested relief should be granted.

## II.    AGREED FIRST AMENDED ORDER APPOINTING RECEIVER

IT IS, THEREFORE, ORDERED, that effective on April 7, 2015:

24.    Andrew S. Cohen, a Texas resident who possesses the necessary qualifications and is not an attorney for or related to any party in this action, be and hereby is appointed the Receiver (the "*Receiver*") for the Property and all other Collateral currently held by, or in control of, Borrowers (the "*Receivership Assets*") and given the authority to do any and all acts necessary to the proper and lawful conduct of the receivership.

25.    The Receiver shall continue to maintain with the Clerk of this Court a bond on file in the amount of $2,500, conditioned that he will well and truly perform the duties of his office and duly account for all monies and properties which may come into his hands and abide by and perform all things which he shall be directed to do.

26.    Until further order of this Court, the Receiver shall have all powers that are authorized under § 64.031 of the Texas Civil Practice and Remedies Code and §§ 11.404 and 11.405 of the Texas Business Organizations Code. The Receiver shall be compensated on an hourly-fee basis until May 8, 2015, and on a weekly basis at $8,500.00 per week thereafter. In addition, the Receiver is hereby authorized forthwith to take any actions necessary to the proper and lawful conduct of the Borrowers and the Property, including the following:

(a)    To take any actions necessary to identify and take complete and exclusive possession, control, and custody of and operate the Receivership Assets, including the right to open mail sent to Borrowers, to change the trade name of the business located on the Property, and the right to enter into, change, modify, or terminate existing contracts;

(b)    To take and maintain possession of all documents, books, records, papers, and accounts relating to the Receivership Assets;

9

6010897.2

(c)    To be exclusively vested with all the powers of an officer, director, manager, managing member, general partner, or other controlling person, as applicable, of each Borrower, including the power to file a voluntary petition, or consent to an involuntary petition, for relief for any Borrower under the United States Bankruptcy Code;

(d)    To retain or remove, as the Receiver deems necessary or advisable, any employee, agent, contractor, officer, director, manager, managing member, or general partner, as applicable, of any Borrower;

(e)    Take and maintain control, possession, and/or custody of (a) all instruments evidencing any note receivable, (b) all assignments and endorsements of any such note receivable, and (c) all other instruments and other assets constituting the Receivership Assets, in each case, with the Receiver maintaining control, possession and/or custody, to the extent the Receiver deems necessary, of the books, papers, information, documents, and records of the Borrowers necessary to facilitate the maintenance, preservation, management, collection and realization of the Receivership Assets;

(f)    To manage and direct the business and financial affairs of the Receivership Assets and any entity owned or controlled by the Receivership Assets, and to develop and maintain a monthly operating budget in consultation with Lender that will serve as the basis for monthly requisitions to fund operations;

(g)    To investigate and determine, in consultation with Lender, the best course of action to protect and, ultimately, maximize the value of the Receivership Assets through prudent management and development.

(h)    To direct the deposit of proceeds of the Property and other receipts of Borrowers for payment of Borrowers' obligations;

(i)    To allow Lender and its agents, employees, representatives, and independent contractors to inspect the Receivership Assets and prepare the same for foreclosure by Lender or reorganization through a petition (whether voluntary or involuntary) for relief under the United States Bankruptcy Code;

(j)    To consent to any lawful process by Lender to enforce its rights in the Collateral, whether through nonjudicial foreclosure, petition (whether voluntary or involuntary) for relief under the United States Bankruptcy Code, or otherwise;

(k)    To use the proceeds of the Property and other receipts of the Borrowers, and to receive and use protective advances made by Lender to the Receiver at Lender's option, to pay the various costs necessary to

maintain, protect, and insure the Property, or to otherwise effect the disposition and monetization of the Property, in each case either with written approval from the Lender or consistent with a budget to be agreed upon in writing by the Receiver and Lender, with all such advances increasing the obligations owing to Lender under the Loan Agreements;

(l)     To engage Golden Steves Cohen & Gordon LLP, Dykema Cox Smith, and Padgett Stratemann, in consultation with Lender, to employ such other employees, consultants, or development or other professionals (including legal advisors) that may be necessary to provide services relating to the management of the receivership or the maintenance of the Receivership Assets, including the development of the Property;

(m)     Enter into agreements relating to the administration of the Receivership Assets, including those relating to the employment of such managers, agents, custodians, consultants, investigators, engineers and accountants as the Receiver deems necessary to allow the Receiver to perform the duties set forth in this order.

(n)     Obtain any necessary insurance, including errors and omissions insurance, relating to the performance of the Receiver's duties under this Order, with the costs of such insurance to be paid from the Receivership Assets; and

(o)     To engage in all such actions, and exercise all the rights and duties, more fully set forth in the receivership order to be submitted in connection herewith as may be necessary or useful in preserving the Property and all other Collateral for the benefit of Lender.

27.     Any money coming into the possession of the Receiver and not expended for any of the purposes authorized herein shall be turned over by the Receiver to Lender for application against the then-outstanding obligations owed by Borrowers to Lender, subject to disgorgement as may be ordered by further order of this Court pursuant to a final, no longer appealable judgment.

28.     The Receiver shall, from and after the entry of this Order, be vested with all the powers of an officer, director, shareholder, general partner, manager, managing member, or other person in control, as applicable, of each of the Borrowers, and authorized and empowered, to the extent deemed necessary by the Receiver after consultation with Lender, and shall be empowered to exercise all such powers of an officer, director, shareholder, general partner, manager,

11

managing member, or other person in control of each Borrower, including the power to make all management and operational decisions for and on behalf of the Borrowers and to file a voluntary petition, or consent to an involuntary petition, for relief for any Borrower under the United States Bankruptcy Code. For the avoidance of doubt, nothing contained in the organizational documents of any Borrower shall be construed to limit the powers of the Receiver as set forth in this Order.

29. The Receiver shall have no liability to any party, unless the Receiver has engaged in a breach of fiduciary duty, willful misconduct, fraud, gross negligence, or conversion. Subject to the foregoing, any debts, liabilities, or obligations incurred by the Receiver in the course of this receivership, including the operation or management of the Receivership Assets, whether in the name of the Receiver or the Receivership Assets, shall be the debt, liability, and obligation of the receivership estate only and not of the Receiver or any employee or agent thereof personally. All employees, agents, and representatives of the Receiver shall have the same judicial immunity and protections of this Court as the Receiver enjoys.

30. To the extent that there is any disagreement arising between the Receiver and Lender or the Borrowers in connection with the matters relating to this receivership, this Court shall have jurisdiction to resolve such disputes.

31. Borrowers, and their officers, directors, partners, managers, agents, servants, employees, representatives, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, shall deliver to the Receiver any and all Receivership Assets in the possession or under the control of any one or more of them.

12

32.     All persons, including materialmen and vendors, lessors, management companies, creditors, banks, investors, former officers, employees, agents, representatives, consultants, equity holders and others associated with or in connection with the Borrowers, with actual notice of this Order, are enjoined from in any way disturbing the Receivership Assets and from prosecuting any actions or proceedings designed to collect their debts or which involve the Receiver or which affect the property of Borrowers, to the extent that the same would injure the Collateral or interfere with or disturb (or encourage others to interfere with or disturb) these receivership proceedings, without the permission of this Court; provided, however, nothing herein shall preclude Lender from exercising its rights and remedies under the Loan Agreements and the other Loan Documents, including but not limited to, foreclosing on the Collateral; provided, further, nothing herein shall preclude any party with standing to seek to modify the immediately preceding injunctive relief granted by this Court, after notice and a hearing. Any such actions in violation of the preceding statements in this Paragraph shall be null and void.

33.     The Receiver is hereby authorized to defend, compromise and adjust such actions or proceedings in state or federal courts now pending and hereafter instituted, as may in his sole discretion be advisable or proper for the protection of the Receivership Assets and to investigate, institute, prosecute, compromise and adjust actions in state or federal court as may in his sole discretion be advisable or proper to recover Receivership Assets improperly or unlawfully held by any person, including but not limited to Borrowers herein; and in that connection the Receiver is hereby indemnified and held harmless by the Receivership estate, to the extent of any equity in the Receivership Assets, for any judgment, costs, or expenses suffered or incurred by him or any of his agents or attorneys as a result of actions instituted against him or them in relation to the discharge of their duties aforesaid or in carrying out or furtherance of this Order; provided,

13

however, that nothing herein shall be construed to indemnify the Receiver to the extent that such judgment, costs, or expenses arise from the gross negligence, willful misconduct, or fraud of the Receiver or any of his agents or attorneys.

34. The Receiver shall make available to Lender, for inspection and copying, any and all books and records of Borrowers relating to the Receivership Assets, now or hereafter in existence.

35. The Receiver shall keep Lender apprised at reasonable intervals of all information and developments concerning the operation of the Receivership, until the Receivership is terminated.

36. The Lender shall provide the Receiver with a retainer of $80,000.00, Dykema Cox Smith with a retainer of $100,000.00, Golden Steves Cohen & Gordon LLP with a retainer of $90,000.00, and Padgett Stratemann with a retainer of $20,000.00, and such consultants or other professionals that may be necessary to provide services relating to the operation of the Receivership on the maintenance of Receivership Assets, including the development of the property.

37. After May 8, 2015, the Receiver shall be paid $8,500.00 per week. That fee shall be paid from the retainer provided by the Lender to the Receiver, without further order of this or any other Court. The Receiver shall submit periodic invoices to the Lender for payment of his fees and fees of any professionals that the Receiver may hire. Such fees shall be paid from the retainers provided by the Lender without further order of this or any other Court until the retainers are depleted. After the retainers are depleted, the Receiver may seek additional retainers from the Lender or may file applications for additional payments to be made by the Lender or from the Receivership Assets. To the extent of any fees incurred in excess of the

14

retainers, the Lender is obligated to pay reasonable fees and expenses incurred by the Receiver and the professionals that he may hire.

IT IS FURTHER ORDERED that this Court assumes jurisdiction over and takes possession of the assets, real and personal, tangible and intangible, of whatever kind and description, wherever located, which constitute the Receivership Assets; and

IT IS FURTHER ORDERED that all Borrowers and present and former Limited Guarantors, and all present and former officers, directors, managers, managing members, partners, agents, representatives, directors, other controlling persons, consultants, agents, representatives, bookkeepers, accountants, and employees of any Borrower or present or former Limited Guarantor, shall not hinder, delay, frustrate, impede, or otherwise take any actions that are intended to or would adversely impact (i) the efforts of the Receiver, (ii) the receivership, (iii) the value of the Property or the Collateral; or (iv) the efforts of the Receiver to maximize the value of the Collateral (including collection of all accounts receivable owing to the Borrowers), and all such parties shall reasonably cooperate with the Receiver in connection with the foregoing, including providing any information pertaining to the Borrowers, the Collateral and Property or in connection with the value or operations of the Property; *provided, however*, nothing herein shall preclude any party with standing from seeking to modify the immediately preceding injunctive relief granted by this Court, after notice and a hearing; and

IT IS FURTHER ORDERED that all present officers, directors, managers, managing members, and general partners of the Borrowers shall, without the need for any additional corporate documentation, be deemed to have resigned such positions effective as of the entry of this Order; and

15

IT IS FURTHER ORDERED that the Receiver shall have the authority to take custody, control, and possession of the Receivership Assets with the full power to institute any actions or proceedings to obtain or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Assets, and all such actions can be filed in this Court; any actions sought by creditors against the Receiver, the Receivership Assets, or that in any way interferes with the Receivership actions hereunder shall be filed in this Court; and

IT IS FURTHER ORDERED that creditors and all other persons are hereby restrained and enjoined from commencing any action to interfere with or impede the activities and actions of the Receiver hereunder and his efforts to take exclusive control of the Receivership Assets; provided, however, nothing herein shall preclude any party with standing from seeking to modify the immediately preceding injunctive relief granted by this Court, after notice and a hearing; and

IT IS FURTHER ORDERED that the Receiver shall file an inventory with this Court, and serve copies of same upon counsel for Lender and Borrowers within thirty (30) days of the entry of this Order summarizing the activities of the Receiver; and

IT IS FURTHER ORDERED that the appointment of the temporary receiver shall continue through the time of final trial of this case at 8:30 o'clock a.m. on the 5th day of April, 2016.

### III. FURTHER FINDINGS AND TEMPORARY INJUNCTION AGAINST BORROWERS

38.     Lender has requested that the Court enter a temporary injunction to preserve the status quo pending a trial on the merits and to prevent Borrowers' sale, transfer, or further encumbrance of the Collateral.

39.     In addition to the findings set forth above, the Court finds as follows:

(a)     It is apparent from the Original Petition and based on the findings set forth herein that immediate and irreparable injury, loss, and/or damage could

16

result to Lender by virtue of the diminution of, waste of, or material injury to, its Collateral.

(b)    Due to the nature of the Collateral and the circumstances more fully described above, there is a grave and immediate risk of diminution in the value of, the loss or waste of, or material injury to, the Collateral.

(c)    Unless the requested temporary injunction issues, Borrowers, which have been in default of the Loan Agreement since December 26, 2014, and have, to this point, failed to cure the default, might have the power to sell, transfer, dispose of, or otherwise encumber Collateral before a hearing can be had on Lender's application for preliminary injunction, and Lender justifiably fears that due to Borrowers continued inability to meet their obligations, Borrowers will not be able to satisfy any such obligations except through the collection of the Collateral. Thus, Lender has no adequate remedy at law. Injunctive relief is appropriate to preserve the status quo and to prevent the diminution in the value of, the loss or waste of, or material injury to, the Collateral.

(d)    In the absence of a temporary injunction, Lender may suffer irreparable harm inasmuch as Collateral is the only known, available, and realistic source of repayment of the more than $38,941,399.00 owed by the Borrowers to Lender; and (b) to the extent that the Property is not serviced and maintained, the value of the Collateral will be threatened. Specifically, if commission of the acts described above is not restrained and enjoined immediately, Lender may suffer irreparable injury, because the value of Lender's Collateral could be diminished in a manner that will be difficult to measure.

(e)    Lender has no adequate remedy at law to preserve the value and secure the return of its Collateral, and monetary damages will be insufficient to fully compensate Lender for the loss, diminution in value of, and material injury to the Collateral because Borrowers are unlikely to be able to satisfy any money judgment obtained, except to the extent the Property is preserved. Accordingly, there is no other remedy that will fully and adequately preserve Lender's rights. Only a temporary injunction will protect Lender's rights. Correspondingly, any potential harm to Borrowers is outweighed by the potential harm to Lender.

IT IS, THEREFORE, ORDERED that, pending trial on the merits of this action, each of the Borrowers, their current or former employees, officers, directors, managers, managing members, general partners, agents, professionals, attorneys, bookkeepers, accountants, or any other person or entity of whom Borrowers may have or had authority or control, are hereby

17

restrained and enjoined from selling, transferring, disposing, or otherwise encumbering or affecting the Collateral, to protect Lender's interests in the Collateral; further, each of the Borrowers, their current or former employees, officers, directors, managers, managing members, general partners, agents, professionals, attorneys, bookkeepers, accountants, or any other person or entity of whom the Borrowers may have or had authority or control, shall fully cooperate with and not interfere with the Receiver to close any transactions consistent with the terms hereof, so long as the Receiver commits to compensate them for the time spent and reimburse them for all reasonable, necessary out-of-pocket expenses actually incurred in doing so, in accordance with a budget approved in writing by the Receiver and Lender.

IT IS FURTHER ORDERED that, pending a trial on the merits of this action, each of the Borrowers, and all persons acting under any of their authority and control or in concert or privity with any of them, are hereby restrained from withdrawing, depleting, causing the waste of, removing, spending, selling, transferring, further encumbering, tampering with, or otherwise affecting the Collateral in whole or in part;

IT IS FURTHER ORDERED that the temporary injunction shall continue through the time of final trial of this case commencing at 8:30 o'clock a.m. on the 5th day of April, 2016;

IT IS FURTHER ORDERED that Lender shall, in accordance with Rule 684 of the Texas Rules of Civil Procedure, continue to maintain a bond on file with the Kendall County District Clerk's Office in the amount of $7,500.00.

IT IS SO ORDERED at ___7:20___ o'clock __p__.m. on this __8th__ day of June, 2015.

_____
JUDGE PRESIDING

SUSAN JACKSON DISTRICT CLERK
KENDALL COUNTY, TEXAS
BY: _____
DEPUTY

15 JUN -8 PM 3: 27

FILED

18

AGREED:

*/s/ C. David Kinder*
C. David Kinder
State Bar No. 11432550
ckinder@coxsmith.com
Mark J. Barrera
State Bar No. 24050258
mbarrera@coxsmith.com

DYKEMA COX SMITH
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

*Attorneys for Receiver Andrew S. Cohen*


*/s/ Dennis J. Windscheffel*
Daniel McNeel Lane, Jr.
State Bar No. 00784441
Dennis J. Windscheffel
State Bar No. 24047127
AKIN GUMP STRAUSS HAUER & FELD LLP
300 Convent Street, Suite 1600
San Antonio, Texas 78205
nlane@akingump.com
dwindscheffel@akingump.com
(210) 281-7000 - Telephone
(210) 224-2035 - Telecopier

Michael P. Cooley
State Bar No. 24034388
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4675
mcooley@akingump.com
(214) 969-2723 - Telephone
(214) 969-4343 – Telecopier

*Attorneys for Plaintiff Putnam Bridge Funding III, LLC*

19

6010897.2

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Western District of Texas

In re    **MA Lerin Hills Holder, LP**

Debtor(s)

Case No.

Chapter   **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

     Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Rafael Rios[1] 123 Eaglerock San Antonio, TX 78227 | Rafael Rios 123 Eaglerock San Antonio, TX 78227 | | Contingent Unliquidated Disputed | 2,555,591.00 |
| Abel Godines[2] 19723 LaSierra Blvd. San Antonio, TX 78256 | Abel Godines 19723 LaSierra Blvd. San Antonio, TX 78256 | Fees & Equipment Rental, CitiCards, and Brauntex Deposit | Contingent Unliquidated Disputed | 747,262.00 |
| Lerin Hills Municipal Utility District[3] 1621 Milam St., Fl. 3 Houston, Texas 77002 | Lerin Hills Municipal Utility District 1621 Milam St., Fl. 3 Houston, Texas 77002 | Development Financing Agreement | Contingent Unliquidated Disputed | 705,649.77 |
| Central Texas Water[4] Maintenance P.O. Box 636 Buda, TX 78610 | Central Texas Water Maintenance P.O. Box 636 Buda, TX 78610 | | Unliquidated Disputed | 561,766.27 |
| DC Civil Construction LLC[5] 307 Candelaria San Antonio, TX 78203 | DC Civil Construction LLC 307 Candelaria San Antonio, TX 78203 | | Contingent Unliquidated Disputed | 301,565.40 |
| Apolinar Zepeda[6] 11555 W FM 471 Lot H 11 San Antonio, TX 78253 | Apolinar Zepeda 11555 W FM 471 Lot H 11 San Antonio, TX 78253 | | Contingent Unliquidated Disputed | 218,614.00 |
| Husch Blackwell LLP[7] 111 Congress Ave., Ste. 1400 Austin, TX 78701 | Husch Blackwell LLP 111 Congress Ave., Ste. 1400 Austin, TX 78701 | | Contingent Unliquidated Disputed | 187,370.40 |

1 The books and records in the hands of the Receiver are insufficient to determine whether Rafael Rios is a statutory insider. On information and belief, at a minimum, Rafael Rios is an insider of an affiliate.

2 The books and records in the hands of the Receiver are insufficient to determine whether Abel Godines is a statutory insider. On information and belief, at a minimum, Abel Godines is an insider of an affiliate.

3 The Debtor intends to negotiate a potential resolution to a Financing Agreement.

4 The Debtor intends to mutually resolve the amount of the claim.

5 The books and records in the hands of the Receiver are insufficient to determine whether DC Civil Construction LLC is a statutory insider. On information and belief, at a minimum, DC Civil Construction LLC is an insider of an affiliate.

6 The books and records in the hands of the Receiver are insufficient to determine whether Apolinar Zepeda is a statutory insider. On information and belief, at a minimum, Apolinar Zepeda is an insider of an affiliate.

B4 (Official Form 4) (12/07) - Cont.

In re __MA Lerin Hills Holder, LP__                    Case No. _____
                    Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| Petuck Capital Corp.[8]<br>80 Doubling Road<br>Greenwich, CT 06830 | Petuck Capital Corp.<br>80 Doubling Road<br>Greenwich, CT 06830 | | Contingent<br>Unliquidated<br>Disputed | 68,000.00 |
| Jones & Carter Inc.<br>1000 Central Pkwy. N., Suite 100<br>San Antonio, TX 78232 | Jones & Carter Inc.<br>1000 Central Pkwy. N., Suite 100<br>San Antonio, TX 78232 | | | 65,000.00 |
| Joe F. Godines Investments LLC[9]<br>2822 Lombrano Street<br>San Antonio, TX 78228 | Joe F. Godines Investments LLC<br>2822 Lombrano Street<br>San Antonio, TX 78228 | | Contingent<br>Unliquidated<br>Disputed | 53,520.00 |
| ACT Pipe and Supply, Inc.<br>P.O. Box 301282<br>Dallas, TX 75303 | ACT Pipe and Supply, Inc.<br>P.O. Box 301282<br>Dallas, TX 75303 | | | 49,170.87 |
| Philip Cortez<br>7919 Liberty Island<br>San Antonio, TX 78227 | Philip Cortez<br>7919 Liberty Island<br>San Antonio, TX 78227 | | | 22,500.00 |
| Commercial Metals<br>P.O. Box 844579<br>Dallas, TX 75284 | Commercial Metals<br>P.O. Box 844579<br>Dallas, TX 75284 | | | 13,877.64 |
| Triple H Truck & Supply/Equipment<br>3427 Coconino Dr.<br>San Antonio, TX 78211 | Triple H Truck & Supply/Equipment<br>3427 Coconino Dr.<br>San Antonio, TX 78211 | | | 10,707.26 |
| Royce Groff Oil Company<br>119 Ebner St.<br>Boerne, TX 78006 | Royce Groff Oil Company<br>119 Ebner St.<br>Boerne, TX 78006 | | | 9,059.78 |
| Martin Rios[10]<br>5925 Fairwood St.<br>San Antonio, Texas 78242 | Martin Rios<br>5925 Fairwood St.<br>San Antonio, Texas 78242 | | | 813.97 |
| Winstead Attorneys<br>2728 N. Harwood Street<br>Dallas, Texas 75201 | Winstead Attorneys<br>2728 N. Harwood Street<br>Dallas, Texas 75201 | | | 648.50 |
| Alpha Testing, Inc.<br>12766 O'Connor Road<br>San Antonio, Texas 78233 | Alpha Testing, Inc.<br>12766 O'Connor Road<br>San Antonio, Texas 78233 | | | 647.50 |

7 This claim is included within the claim of the Lerin Hills Municipality District.

8 Any debt arose while Petuck Capital Corp. was a statutory insider.

9 Any debt arose while Joe F. Godines Investments LLC was a statutory insider.

10 The books and records in the hands of the Receiver are insufficient to determine whether Martin Rios is a statutory insider.   On information and belief, at a minimum, Martin Rios is an insider of an affiliate.

B4 (Official Form 4) (12/07) - Cont.

In re   MA Lerin Hills Holder, LP                   Case No. _____

                 Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

     I, the Receiver of the entity named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date    6/9/15         Signature                                
                                            Andrew S. Cohen
                                            Receiver

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

Software Copyright (c) 1996-2014 Best Case, LLC - www.bestcase.com

*Exhibit B-2 to Appendix 5005: If filing "bare-bones" petition, matrix, & 20 largest unsecured list.*

# United States Bankruptcy Court
### Western District of Texas

| | | |
|---|---|---|
| In re   MA Lerin Hills Holder, LP | | Case No. _____ |
| | Debtor(s) | Chapter   11 |

## DECLARATION FOR ELECTRONIC FILING OF
## BANKRUPTCY PETITION AND MASTER MAILING LIST (MATRIX)

### PART I:  DECLARATION OF PETITIONER:

As an individual debtor in this case, or as the individual authorized to act on behalf of the corporation, partnership, or limited liability company seeking bankruptcy relief in this case, I hereby request relief as, or on behalf of, the debtor in accordance with the chapter of title 11, United States Code, specified in the petition to be filed electronically in this case.  I have read the information provided in the petition and in the lists of creditors to be filed electronically in this case and *I hereby declare under penalty of perjury* that the information provided therein, as well as the social security information disclosed in this document, is true and correct.  I understand that this Declaration is to be filed with the Bankruptcy Court within five (5) business days after the petition and lists of creditors have been filed electronically.  I understand that a failure to file the signed original of this Declaration will result in the dismissal of my case.

■ I hereby further declare under penalty of perjury that I have been authorized to file the petition and lists of creditors on behalf of the debtor in this case.

Date: ___6/9/15___            _____
                              Andrew S. Cohen, Receiver

### PART II:  DECLARATION OF ATTORNEY:

I declare *under penalty of perjury* that:  (1) I will give the debtor(s) a copy of all documents referenced by Part I herein which are filed with the United States Bankruptcy Court; and (2) I have informed the debtor(s), if an individual with primarily consumer debts, that he or she may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

Date: ___6/9/15___            _____
                              Deborah D. Williamson 21617500, Attorney for Debtor
                              112 E. Pecan Street, Suite 1800
                              San Antonio, TX 78205-1521
                              210-554-5500 Fax:210-226-8395